UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILMA COOLIDGE, as Executor of the Estate
of Howard Southard, Deceased,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

**DECISION AND ORDER**

10-CV-363S

# Contents

I.    Introduction ...................................................................................................... 2
II.   Background ...................................................................................................... 3
  A.  Facts............................................................................................................ 3
  B.  Procedural History ...................................................................................... 4
    1.  Plaintiff's Motion for New Trial or Amended Judgment (No. 224) .................. 4
    2.  Plaintiff's Bill of Costs (Nos. 226, 235)............................................................ 5
  C.  Plaintiff's Motion for New Trial (Docket No. 224) ...................................... 6
    1.  Plaintiff's Initial Arguments (Docket No. 224)................................................. 6
    2.  The Government's Response (Docket Nos. 231, 232)...................................... 8
    3.  Plaintiff's Reply (Docket Nos. 251, 252, 261)................................................. 9
    4.  Government Sur-Reply (Docket Nos. 257, 258) ........................................... 11
  D.  Plaintiff's Amended Bill of Costs (Docket Nos. 235, 226) ....................... 12
III.  Discussion of Motion for New Trial and Amend Judgment (Docket No. 224) ..... 14
  A.  Applicable Standards for Motion for New Trial and Amend Judgment............... 14
  B.  Conscious Pain and Suffering .................................................................. 17
    1.  The Duration of Conscious Pain and Suffering ............................................. 18
    2.  The Rate ........................................................................................................ 21
    3.  Calculation of Damages................................................................................. 24
  C.  Fear of Impending Death.......................................................................... 25
  D.  Plaintiff's Total Damages ......................................................................... 34
IV.   Discussion of Plaintiff's Amended Bill of Costs (Docket No. 235, Ex. A) ........... 35
  A.  Applicable Standards for Recovery of Costs ........................................... 35
  B.  Undisputed Costs ..................................................................................... 37
  C.  Transcript Costs ....................................................................................... 37
    1.  Original Transcription Costs.......................................................................... 37
    2.  Dr. Nader's Transcript .................................................................................. 41
    3.  Costs of Evidentiary Ruling Transcript ......................................................... 44

        4.    Esquire Deposition Solutions ........................................................ 45
        5.    Recoverable Transcription Costs ................................................. 47
    D.  Duplication Charges .......................................................................... 48
        1.    In-House Duplication Costs ......................................................... 48
        2.    Other Duplication Charges Claimed .......................................... 50
    E.  Plaintiff's Claimed Other Costs ........................................................ 51
    F.  Acceptable Costs.............................................................................. 52
V.   Conclusion ............................................................................................ 53
VI.     Orders ................................................................................................ 53

## I.    Introduction

Before this Court is Plaintiff's Motion[1] (Docket No. 224) for a new trial or amendment of the Judgment (Docket No. 221) on damages following her 2018 Federal Tort Claims Act bench trial.  Plaintiff is the executrix of her late brother, Howard Southard.  Following the bench trial, this Court found that Plaintiff's damages totaled $2,115,436.64, for the pain and suffering, consciousness of impending death, funeral expenses, and the losses of the heirs of Mr. Southard.  (Docket No. 220, Coolidge v. United States, No. 10CV363, 2020 WL 3467423 (W.D.N.Y. June 25, 2020).)

In this motion, Plaintiff contends that Howard Southard suffered longer and more severely than was found by this Court.  Thus, she moves either that the judgment be altered to reflect the greater suffering endured or a new trial ordered.  Familiarity with much of the evidence and the Decision and Order (id.) following the bench trial is presumed.

---

[1]In support of her motion, Plaintiff submits her attorney's Declaration with exhibits (Docket No. 224); her Memorandum of Law (Docket No. 225), and her initial Reply (Docket No. 238).  Plaintiff then moved for leave to amend her Reply (Docket No. 239).  Despite the Government's opposition (see Docket No. 243), this Court granted leave to amend (under conditions) (Docket Nos. 244, 247).  Plaintiff then filed her revised Reply papers (Docket Nos. 251, 252; see also Docket No. 261, Plaintiff's Attorney's revised Reply Declaration).

In opposition, the Defendant United States submits its Memorandum of Law (Docket No. 231), its attorney's Declaration (Docket No. 232), and its Sur-Reply (Docket Nos. 257 (Sur-Reply Memorandum), 258 (Government Attorney's Declaration)).

For the reasons stated herein, Plaintiff's Motion for a New Trial (Docket No. 224) is denied, but her motion for amendment of the Judgment (id.) is granted in part.  A new trial will not be held but the judgment for Plaintiff is increased to total $3,915,436.64.

Meanwhile, Plaintiff submitted (Docket No. 226) and then amended (Docket No. 235, Ex. A) her Bill of Costs.  Following the Government's objections (e.g., Docket No. 228) and extensive briefing discussed below, for the reasons stated herein, this Court awards Plaintiff costs totaling $11,974.50, based upon the Amended Bill of Costs.

## II.  Background

### A.  Facts

Plaintiff sued for malpractice upon Howard Southard and his wrongful death while hospitalized at the Veterans Affairs Medical Center in Buffalo, New York.  At the conclusion of the bench trial, this Court found for Plaintiff and awarded her a total of $2,115,436.64 for Mr. Southard's pain and suffering and wrongful death and other injuries, Coolidge v. United States, supra, 2020 WL 3467423 (W.D.N.Y. June 25, 2020) (Docket No. 220).

Pertinent to the arguments in Plaintiff's pending motion are $1,740,000.00 of that award for Mr. Southard's conscious pain and suffering and $366,663.00 for fear of his impending death.  Plaintiff argues that these figures did not adequately compensate for his losses.

This Court found that Mr. Southard suffered conscious pain and suffering for 58 days of the 118 days of hospitalization, excluding time during his palliative care and days when his medical record noted that he was alert and indicated no pain, Coolidge, supra, 2020 WL 3467423, at *36.  Applying this Court's earlier decision in Kolerski v.

United States, 06CV422, 2008 WL 4238924 (W.D.N.Y. Sept. 8, 2008) (Skretny, J.), and citing New York State cases as comparative cases (but acknowledging that these cases are no way factually close to what Mr. Southard endured, Coolidge, supra, 2020 WL 3467423, at *33-34, 36), this Court found that a rate of $30,000.00 per day for Mr. Southard's conscious pain was reasonable compensation.  At $30,000.00 per day, this Court calculated damages for suffering he endured for 58 days totaled $1,740,000.00. Id. at *36.

On Mr. Southard's claim for his fear of impending death, this Court found he feared from July 16, 2009, when he learned that continued dialysis would do him no good with prior knowledge that, if taken off dialysis, he would perish, id. at *37.  Again comparing New York State cases (again none having similar duration realizing death was imminent or overall hospitalization as endured by Mr. Southard, see id. at *37), this Court found that a rate of $33,333.00 per day (the average of those cases' damage awards calculated to a per day rate) was applicable and reasonable compensation for the last eleven days of his life for his apprehension of his death totaled $366,663.00, id. at *38.

### B.  Procedural History

#### 1.  Plaintiff's Motion for New Trial or Amended Judgment (No. 224)

Following entry of Judgment (Docket No. 211), Plaintiff filed the pending motion for a new trial (Docket No. 224).  Responses to this motion initially were due by August 27, 2020, and any reply by September 10, 2020 (Docket No. 227).  This schedule was extended (see Docket No. 229), with the response due September 15, 2020, and reply by October 15, 2020 (Docket No. 230).  Plaintiff moved to extend that reply deadline

(Docket No. 233) and this Court granted that motion, resetting that deadline for November 12, 2020 (Docket No. 237).

Defendant responded (Docket Nos. 231, 232).   Plaintiff then initially replied (Docket No. 238).  Plaintiff later moved for leave to amend her Reply (Docket No. 239). After a December 2, 2020, status conference on the motion for leave to amend (Docket No. 243), this Court granted conditional leave to amend her Reply (Docket Nos. 244, 247).  Plaintiff then filed her revised Reply papers (Docket Nos. 251 (Attorney's Reply Declaration), 252 (Revised Reply Memorandum and Exhibit)); this Court considers Plaintiff's revised Reply (Docket Nos. 251, 252) instead of the original Reply (Docket No. 238).   The Government then filed its Sur-Reply papers (Docket Nos. 257, 258). Plaintiff sought leave to reply to the Government's Sur-Reply (Docket No. 259) which was denied but Plaintiff was allowed to correct her counsel's Reply Declaration (Docket No. 260; see Docket No. 261).

## 2.  Plaintiff's Bill of Costs (Nos. 226, 235)

Meanwhile, on July 27, 2020, Plaintiff filed her Bill of Costs (Docket No. 226; see Docket No. 235, Pl. Reply Ex. B) and the Government objected to most of the costs claimed (Docket No. 228).  This Court ordered Plaintiff's reply to be due on October 15, 2020 (Docket No. 230), cf. W.D.N.Y. Loc. Civ. R. 54(c).  Plaintiff submitted with her Reply an Amended Bill of Costs (Docket No. 235, Ex. A).  This Court considered the Amended Bill of Costs.

On the Government's request (Docket No. 236), this Court then granted the Government leave to file a Sur-Reply, due by December 1, 2020, with Plaintiff's response to that paper due by December 15, 2020 (Docket No. 237).  The Government duly filed

its Sur-Reply (Docket Nos. 241, 242) and Plaintiff filed her timely Response thereto (Docket No. 245).   The Court Clerk has not acted on Plaintiff's Bill of Costs or its amendment.

Oral argument was deemed unnecessary; the Motion for a New Trial and Plaintiff's Amended Bill of Costs were deemed submitted as of March 22, 2021.

### C.  Plaintiff's Motion for New Trial (Docket No. 224)

#### 1.  Plaintiff's Initial Arguments (Docket No. 224)

Plaintiff argues several points that she claims erroneously diminished her damages.   She focuses on two aspects of the damages awarded, Howard Southard's conscious pain and suffering and his fear of his impending death.   In her revised Reply she adds a critique on the calculation of the damage amount for Mr. Southard's pain and suffering (Docket No. 252, Pl. Revised Reply Memo. at 10-11).

Plaintiff argues that Mr. Southard suffered conscious pain and suffering for the entirety of his 118 days while hospitalized at VAMC (Docket No. 224, Pl. Atty. Decl. ¶¶ 7-9, 23-26; see generally Docket No. 252, Pl. Revised Reply Memo. at 1-9).  She noted the fifty procedures Mr. Southard endured during his hospitalization (Docket No. 224, Pl. Atty. Decl. ¶¶ 168-75).   Mr. Southard was unable to eat or drink on his own for the entire hospitalization, but the Decision and Order did not reflect this (id. ¶¶ 68-70; Docket No. 225, Pl. Memo. at 7).   Mr. Southard's pain due to bedsores for the last two months of his life was not considered (Docket No. 224, Pl. Atty. Decl. ¶¶ 71-75, 166, 176-78; Docket No. 225, Pl. Memo. at 8-9).   Plaintiff discounts the documented pain scores of 0 or 99, with those scores reflecting Mr. Southard's inability to verbalize his condition (Docket No. 224, Pl. Atty. Decl. ¶¶ 60-66, 88-159, 162).   Mr. Southard was recorded as being

sedated (that is either entirely under sedation for a day or intermittently sedated) for 23 of his 118 days in VAMC, thus suffering throughout the 95 other days and making the finding of only 58 days of conscious pain and suffering "hardly reflects the length and gravity of Mr. Southard's physical pain and suffering" (id. ¶ 162).  If Defendant assumed Mr. Southard was in excruciating pain (by administering pain medication daily during his entire hospitalization), then Plaintiff invites this Court to "assume the same" (id. ¶ 67; see id. ¶¶ 64, 65, 62-63).  Plaintiff also faults Defendant for pain management, contending that Mr. Southard was alert and complained of pain despite sedation (id. ¶¶ 76-78), pointing to "sedation holidays" Mr. Southard was given in April and May 2009 to have him more alert (id. ¶¶ 80-82).

Plaintiff points to Mr. Southard's mental anguish from July 20, 2009, despite pain reports noted in the medical record (id. ¶¶ 27-42).  Plaintiff emphasized Mr. Southard's mental anguish, "forced to endure while he remained a prisoner in his own body" (id. ¶ 183), and forced (due to his bedsores and festering flesh) "to wallow in the stench of his own rotting flesh" (id. ¶ 178).  She argues that Mr. Southard was "in absolute mental agony throughout every moment of his 118 days of consciousness, regardless of whether or not he was experiencing physical pain" (Docket No. 225, Pl. Memo. at 9).

Plaintiff argues that this Court erred in discounting the last five days in which Mr. Southard was in palliative care from consideration for his conscious pain and suffering despite pain medication Mr. Southard was given during that care (Docket No. 224, Pl. Atty. Decl. ¶¶ 43-59, 182).

As for the fear of his impending death, Plaintiff argues Mr. Southard endured this every day from when his kidneys were killed (Docket No. 225, Pl. Memo. at 22, 20) rather

7

than Mr. Southard's last eleven days as found in the Decision and Order, 2020 WL 3467423, at *37.

### 2. The Government's Response (Docket Nos. 231, 232)

The Government responds that Plaintiff does not allege new facts in support of her motion (Docket No. 232, Gov't Atty. Decl. ¶¶ 11, 13), citing evidence already in the record (id. ¶ 12). The Government claims that many of Plaintiff's counsel's assertions "are unsupported argument and speculation and should not be considered" (id. ¶ 14). The Government next argues that Plaintiff is improperly attempting to relitigate arguments after the verdict rather than in a timely post-trial response (id. ¶ 21). The Government notes this Court's "meticulous findings regarding Mr. Southard's pain and suffering based upon analysis and careful consideration of the proof in the case" (id. ¶ 7), including this Court's consideration of Mr. Southard's palliative care period, noting that he was considered to have been comfortable (id. ¶ 24).

The Government contends that reconsideration is an extraordinary remedy and requesting it should not be based upon relitigating arguments Plaintiff raised (or could have raised) (Docket No. 231, Gov't Memo. at 5). Plaintiff moving for reconsideration also could not present new theories or otherwise take a second bite at the apple (id.). An argument "raised for the first time on a motion for reconsideration are therefore untimely," Cruz o/b/o Vega v. Barnhart, No. 04 Civ. 9794, 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006) (id.); National Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., 265 F.3d 97, 115-16 (2d Cir. 2001). The Government argues that Plaintiff has not met the standards for Rule 59(a)(1)(B) or (e) (id. at 6). On Plaintiff seeking reconsideration of Mr. Southard's suffering from bedsores, the Government contends that Plaintiff merely rehashes cases

8

or cases that she could have cited in her post-trial submissions (id. at 10-11), as well as Plaintiff's arguments for reconsidering Mr. Southard's pain and suffering (id. at 12) and his fear of impending death claim (id. at 15-16).

### 3.   Plaintiff's Reply (Docket Nos. 251, 252, 261)

Plaintiff replies that Mr. Southard suffered from physical pain, emotional agony, and loss of enjoyment of life for 118 days of his hospitalization (Docket No. 252, Pl. Revised Reply Memo. at 1-3), that he suffered more pain and suffering than in the comparable cases cited in the Decision and Order (id. at 10-11). Mr. Southard also was entitled to a greater recovery for impending doom and death because he was aware of his situation longer than the eleven days acknowledged in the Decision (id. at 11-15). She outlines Mr. Southard's pain and suffering (id. at 2-9).   In her counsel's reply Declaration, Plaintiff details the impact of Mr. Southard's confinement (Docket No. 261, Pl. Atty. Revised Reply Decl. ¶¶ 4, 1-12, 13-29; see generally Docket No. 251, Pl. Atty. Reply Decl.), with such effects as drastic weight changes (Docket No. 261, Pl. Atty. Revised Reply Decl. ¶ 15), respiratory issues arising from use of the ventilator (id. ¶¶ 18-21), Mr. Southard becoming incontinent and having anuria (id. ¶¶ 22-25), and enduring breakthrough pain, agitation, depression and/or anxiety (id. ¶¶ 26-29).

Plaintiff claims that Mr. Southard should recover for the pain endured for the entirety of his hospitalization (Docket No. 252, Pl. Revised Reply Memo. at 3-5).   Plaintiff next contends that use of pain medication did not eliminate all physical and emotional pain to reduce recovery (id. at 5-9).   She cites to the record in Kolerski v. United States, No. 06CV422 (id., Ex. A, U.S. Proposed Findings of Fact ¶ 130), that the treating physician in that case testified that controlled pain "is not the same as eliminated" (Docket

No. 252, Pl. Revised Reply Memo. at 9, quoting, Kolerski, supra, Ex. A, U.S. Proposed Findings of Fact ¶ 130 (quoting Kolerski Trial Tr. at 483-84)).

Plaintiff distinguishes comparable cases cited in the Decision and Order (Docket No. 252, Pl. Revised Reply Memo. at 10-11). She concludes that the damages are akin to those found in Hyung Kee Lee v. New York Hosp. Queens, 118 A.D.3d 750, 987 N.Y.S.2d 436 (2d Dep't 2014), of an average of over $1 million per day for the three days of decedent's hospitalization in that case (id. at 11). She concludes that "a verdict of at least $10 million could reasonabl[y] [sic] be sustained for the 118 days of conscious pain and suffering, including loss of enjoyment of life, experienced by Mr. Southard" (id.).

If this Court accepts Plaintiff's methodology, however, a reasonable verdict also could be over $118 million (or over a $1 million per day Mr. Southard endured pain and suffering for the entire 118 days of his hospitalization), an unreasonably excessive recovery. On the other hand, Plaintiff does not explain how she reached at least $10 million as reasonable compensation.

As for Mr. Southard's impending death, Plaintiff argues that as soon as Mr. Southard learned that the April 1 operation failed, and his kidneys were "killed" he had the fear of his impending death (id. at 11-15; Docket No. 261, Pl. Atty. Revised Reply Decl. ¶¶ 31, 41 (Mr. Southard was deemed "Ready to Learn" from April 6, 2009), 33, 42 (from May 20 conversation with son Howard "Sonny" Southard that doctors "killed" his kidneys and they were "f'ing killing" him)). Plaintiff also notes that Mr. Southard had to face the decision to in effect terminate his own life (Docket No. 252, Pl. Revised Reply Memo. at 13).

4.   Government Sur-Reply (Docket Nos. 257, 258)

The Government's Sur-Reply notes that Plaintiff's replacement Reply Declaration should not be considered because it is signed by a different attorney than its purported declarant (Docket No. 258, Gov't Atty. Decl. ¶ 3).   Plaintiff then moved for leave to resubmit the Reply Declaration with a correct signature block (Docket No. 259, Pl. Atty. Decl. ¶ 14).   That motion was granted (Docket No. 260; see Docket No. 261, Pl. Atty. Revised Reply Decl.), see Ceglia v. Zuckerberg, No. 10CV569, 2013 WL 1208558, at *3 n.3 (W.D.N.Y. Mar. 26, 2013) (Foschio, Mag. J.) (correcting wrong attorney's name in electronic signature block by refiling corrected paper), adopted, 2014 WL 1224574 (W.D.N.Y. Mar. 25, 2014) (Arcara, J.), aff'd, 600 F. App'x 34 (2d Cir. 2015).   The mistake in the declarant in counsel's Declaration was a technical defect and had no effect on the substance asserted in the Reply Declaration, see Grant v. Morgan Guar. Trust Co. of N.Y., 638 F. Supp. 1528, 1531 n.6 (S.D.N.Y. 1986), and that defect is corrected (Docket No. 261).

The Government counters that Plaintiff speculated about the degree of pain Mr. Southard suffered during his hospitalization (Docket No. 258, Gov't Atty. Decl. ¶¶ 6-10).   The Government refutes Mr. Southard's alleged weight gain, pointing to the medical record where there was a question as to the accuracy of his weight (id. ¶ 14).

The Government concludes that this Court properly awarded pain and suffering damages only for periods that showed Mr. Southard was conscious of his pain (Docket No. 257, Gov't Sur-Reply Memo. at 1-3, 5-6) and in excluding pain and suffering damages during Southard's palliative care (id. at 3-4).   Thus, this Court properly awarded pain and suffering damages for 58 of 89 days between April 25 to July 22, 2009 (id. at 1-4, 5-6,

14).   The Government argues that Plaintiff failed to substantiate Mr. Southard's loss of enjoyment of life to warrant increasing his claimed pain and suffering (id. at 7-13).   The Government advocates adhering to the fear of impending death damages because Plaintiff has not shown that Mr. Southard was keenly aware of his grim prognosis as of April 8, 2009, or the other dates earlier than July 16, 2009, found by this Court (id. at 13-14).

D.  Plaintiff's Amended Bill of Costs (Docket Nos. 235, 226)

On July 27, 2020, Plaintiff submitted her initial Bill of Costs, seeking a total of $17,725.57 (Docket No. 226; see Docket No. 235, Pl. Reply Ex. B).

The Government argued that the costs for transcripts lacks substantiation and should be denied (Docket No. 228, Gov't Memo. at 3, 3-9).  The Government claimed that Plaintiff is seeking an excessive amount for the per page cost claimed (id. at 3-9).  The Government also objected to paying Plaintiff for the cost of copying an oral Decision and Order of this Court as transcription costs (id. at 8).  Next, the Government argued that Plaintiff taxed copying charges inappropriately or at inflated per page rates (id. at 10-11).  The Government would have this Court reject the $2,690 in other costs taxed by Plaintiff because Plaintiff failed to submit receipts from common carriers, hotel, and parking for her experts (id. at 11-14).  The Government concluded that Plaintiff is entitled only to a total of $522.00 in costs that she substantiated (id. at 14).

Plaintiff duly replied with her amended Bill of Costs (Docket No. 235, Ex. A) with attached receipts, charts, and other supporting documents (id. Exs. E, I, J, K. L), now seeking to recoup $14,643.73 in total costs including the Clerk's fee (Docket No. 235, Ex. A, Pl. Atty. Reply Decl. at 11; see Docket No. 245, Pl. Response at 7).  Plaintiff also

seeks $70.00 to recover service fees; a total of $9,143.90 for transcripts; $2,911.86 in witness fees, travel, and lodging expenses for her expert witnesses; and $2,167.97 for photocopying (Docket No. 235, Ex. A).

The Government then sought leave to file a Sur-Reply (Docket No. 236) which was granted (Docket No. 237), and was due by December 1, 2020, and Plaintiff's response to it was due by December 15, 2020 (id.).  In its Sur-Reply, the Government objected to portions of the amended costs claimed, agreeing that Plaintiff should be entitled only to a total of $12,062.43 (Docket No. 242, Gov't Atty. Decl. ¶ 30).  The Government renews its objections to excessive transcript and duplication costs and questionable travel expense entries claimed by Plaintiff (Docket Nos. 241, Gov't Sur-Reply Memo., 242, Gov't Atty. Decl.).

In her response, Plaintiff justifies some of the claimed expenses, the costs for deposition transcripts of Drs. Nader Djalal Nader and Barton Muhs and charging $.20 per page for in-house duplication (Docket No. 245, Pl. Response ¶ 3).  Plaintiff claims the deposition transcription costs for Dr. Nader because she deems Dr. Nader to be a party and, under Part II.D.1.c. of this Court's "Guidelines for Bills of Costs," the costs of this deposition was necessary for use in the case and thus recoverable, even if that testimony was not used at trial (id. ¶¶ 5-6, citing Fields v. General Motors Corp., 171 F.R.D. 234 (N.D. Ill. 1997); Bauta v. Greyhound Lines, Inc., No. 14-CV-3725 (RER), 2019 WL 8060181, at *4 (E.D.N.Y. June 17, 2019) (Reyes, Mag. J.).  Dr. Nader was the anesthesiologist during Mr. Southard's April 1, 2009, surgery and Operation Room Manager (id. ¶¶ 4, 7, 5).

13

Plaintiff claims daily transcription for Dr. Muhs trial testimony was necessary (id. ¶¶ 9-12). She points out that this trial was five weeks long and, under Bartels v. Incorporated Village of Lloyd Harbor, CV 08-1256 AKT, 2012 WL 181633, at *2-4 (E.D.N.Y. Jan. 6, 2012) (Tomlinson, Mag. J.), daily copies of trial transcripts are necessary.

She defends the $.20 per page in-house duplication rate, arguing that the Consumer Price Index and the average pay for paralegals have increased from 1997 (id. ¶¶ 13-21, Exs. D-F) when $.10 per page was found to be reasonable (see Docket No. 235, Pl. Atty. Reply Decl. ¶¶ 28-30, citing cases leading to 1997 origin for acceptance of $.10 rate, General Elec. Co. v. Compagnie Euralair, S.A., No. 96 CIV. 0884 (SAS), 1997 WL 397627, *6 (S.D.N.Y. May 27,1997) (Peck, Mag. J.) (Report & Rec.), adopted, 1997 WL 397627 (S.D.N.Y. July 3, 1997)). Since 1997, the United States Bureau of Labor of Labor Statistics Consumer Price Index increased by 62.14% (id. ¶ 16, Ex. D). Comparatively, Plaintiff points out that paralegals' salaries also increased over 55% during that same 23-year period (id. ¶ 20, Exs. E, F). Plaintiff concludes that her counsel's $.20 per page in-house rate is justified as the current going rate (see id. ¶ 21).

### III.   Discussion of Motion for New Trial and Amend Judgment (Docket No. 224)

#### A.  Applicable Standards for Motion for New Trial and Amend Judgment

After a bench trial, this Court may, on motion (such as here) open the Judgment, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new Judgment, Fed. R. Civ. P. 59(a)(2). The grant of a new trial or amendment to a judgment under Rule 59 rests on sound discretion of the trial court, 11 Charles A. Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice &

Procedure—Civil § 2803 (2012), at 61-62, id., § 2804, at 66; <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 143 (2d Cir. 1998) (<u>see</u> Docket No. 231, Gov't Memo. at 3).  The motion here is timely, <u>see</u> Fed. R. Civ. P. 59(b), (e).

Rule 59(a)(1)(B) provides "the court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows: . . . (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  (Docket No. 231, Gov't Memo. at 3.)  The motion is granted "only for substantial reasons such as a 'manifest error of law or mistake of fact,'" <u>Guzik v. Albright</u>, No. 16CV2257 (JPO), 2020 WL 2611917, at *1 (S.D.N.Y. May 21, 2020), citing <u>Ball v. Interoceanica Corp.</u>, 71 F.3d 73, 76 (2d Cir. 1995) (quoting, in turn, 11 <u>Federal Practice & Procedure</u> § 2804, at 53 (2d ed. 1995)) (<u>id.</u>).  Analogizing Rule 61 standard, the Second Circuit held that the grounds for granting a new trial "'unless refusal to take such action appears to the court inconsistent with substantial justice,'" <u>LiButti v. U.S.</u>, 178 F.3d 114, 118-19 (2d Cir. 1999) (quoting Fed. R. Civ. P. 61) (<u>id.</u> at 3-4).  The Rule 59(a)(1)(B) "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" <u>Sequa</u>, <u>supra</u>, 156 F.3d at 144 (<u>id.</u> at 4).

Under Rule 59(e), essentially a motion for reconsideration, <u>Guzik</u>, <u>supra</u>, 2020 WL 2611917, at *1, this Court may alter or amend judgments "to correct a clear error of law or prevent manifest injustice," <u>Collision v. Int'l Chem. Workers Union, Local 217</u>, 34 F.3d 233, 236 (4th Cir.1994) (citation to quote omitted); <u>Munafo v. Metropolitan Transit Auth.</u>, 381 F.3d 99, 105 (2d Cir. 2004).

Again, in this Federal Tort Claims Act case, the law of where the act or omission occurred applies, Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); Coolidge, supra, 2020 WL 3467423, at *1; here New York law, including its calculation of damages, applies, Ulrich v. Veterans Admin. Hosp., 853 F.2d 1078, 1081-82 (2d Cir. 1988); Coolidge, supra, 2020 WL 3467423, at *3.  Once Plaintiff established the Government's negligence, "she is entitled to recover 'a sum of money which will justly and fairly compensate . . . [her] . . . for the loss resulting from the injuries sustained,' Robinson v. U.S., 330 F.Supp.2d 261, 290 (W.D.N.Y. 2004) [Curtin, J.] (quoting Kehrli v. City of Utica, 105 A.D.2d 1085, 1085, 482 N.Y.S.2d 189 (4th Dep't 1984))," Furey v. U.S., 458 F. Supp. 2d 48, 56 (N.D.N.Y. 2006); Coolidge, supra, 2020 WL 3467423, at*3.

Under New York law of pain and suffering damages, an award would not be set aside "unless the awards deviate materially from what would be reasonable compensation," Perez v. Live Nation Worldwide, Inc., No. 158373/2013, 2020 N.Y. Misc. LEXIS 3549, at *22 (N.Y. Sup. Ct., N.Y. County July 24, 2020) (citing N.Y. CPLR 5501(c) and New York State cases); Kolerski, supra, 2008 WL 4238924, at *4; Coolidge, supra, 2020 WL 3467423, at *32.  "The 'reasonableness' of compensation must be measured against relevant precedents of comparable cases," Kayes v. Liberati, 104 A.D.3d 739, 741, 960 N.Y.S.2d 499, 501 (2d Dep't 2013); Perez, supra, 2020 N.Y. Misc. LEXIS 3549, at *23, with these prior cases, while not binding upon this Court, provide guidance and enlightenment in concluding whether the award constitutes reasonable compensation, see Miller v. Weisel, 15 A.D.3d 458, 459, 790 N.Y.S.2d 189, 190 (2d Dep't 2005); Perez, supra, 2020 N.Y. Misc. LEXIS 3549, at *23.  "Crucially, the amount constituting 'reasonable compensation' must be assessed with due regard to the 'circumstances

16

presented,'" Perez, supra, 2020 N.Y. Misc. LEXIS 3549, at *23 (quoting Luna v. New York City Tr. Auth., 116 A.D.3d 438, 438, 986 N.Y.S.2d 329, 329 (1st Dep't 2014)). Perez held that determining reasonable compensation also includes factoring in increased cost of living, medical and personal care, and "the better medical and scientific understanding of the severity of certain injuries," Perez, supra, 2020 N.Y. Misc. LEXIS 3549, at *23, after the precedents were rendered and to not have courts adopt by rote prior damage precedents, id.

B.  Conscious Pain and Suffering

This Court next considers Plaintiff's claims for Mr. Southard's conscious pain and suffering and his fear of impending death, focusing on the duration of each of these injuries.

Initially a note of what Plaintiff is not contending. She does not object to the liability findings, that this Court found the Government was negligent in the care of Mr. Southard and that negligence led to his injuries and death. She is not seeking to adduce new testimony or evidence to establish her damages claim; Plaintiff relies upon the evidence already before this Court at trial in arguing for amendment of the Judgment and for additional damages. Thus, so much of her motion (Docket No. 224) seeking a new trial is denied. This Court can proceed to determine whether to amend the Judgment without reopening the trial or seeking additional evidence.

Plaintiff also does not object to other portions of the damage analysis, totaling $8,773.64 for Mr. Southard's funeral expenses (less offset for VA death benefits received) and loss to his decedents of Mr. Southard's direction, guidance, and financial support.

1.  The Duration of Conscious Pain and Suffering

Plaintiff is correct that Mr. Southard suffered during the 60 days he was noted as being alert and not in pain in the medication record and during his final days in palliative care.  This is despite the Government's contention that Mr. Southard was not conscious of his pain and suffering, for example from April 1 through 24, 2009, or specific days thereafter when the record noted that he was resting comfortably (Docket No. 257, Gov't Sur-Reply Memo. at 1-2, 3-4).  The Government (id. at 2) cites the New York State Supreme Court, Appellate Division, Second Department's decision in Haque v. Daddazio, 84 A.D.3d 940, 922 N.Y.S.2d 548 (2011), that the decedent needed to be conscious to recover for her pain and suffering.  In Haque, decedent was struck attempting to cross Route 9 but not at an intersection or crosswalk, 84 A.D.3d at 941, 922 N.Y.S.2d at 549.  To establish that decedent did not endure conscious pain and suffering, defendant there stated that she was rendered unconscious immediately following the accident and remained so until her death eight hours later, id., 84 A.D.3d at 941, 922 N.Y.S.2d at 549.  The Second Department affirmed the dismissal of the conscious pain and suffering claim in Haque because the plaintiff "did not address the issue of whether the decedent experienced any level of cognitive awareness following the accident," id., 84 A.D.3d at 941, 942, 922 N.Y.S.2d at 550 (holding plaintiff failed to justify reconsideration by the Supreme Court of its initial grant of summary judgment to defendant).

This Court reaffirms its earlier finding (Docket No. 220, Coolidge, supra, 2020 WL 346723, at *29, 32) that New York law does not require a litigant or decedent have full consciousness of his pain and suffering where he is sedated to ameliorate the effects of pain.  New York courts recognized that a litigant needs to have only "some level of

awareness," 1B N.Y. PJI 2:280, at 925 (2020), or "any level of cognitive awareness" as held in Haque, supra, 84 A.D.3d at 941, 922 N.Y.S.2d at 550.  Adhering to that earlier finding (Docket No. 220, Coolidge, supra, 2020 WL 346723, at *36), Mr. Southard was conscious of his pain and suffering, manifested by his agitation as observed by VAMC medical staff and other witnesses.  This Court originally calculated the number of days of conscious pain and suffering from the total number of days Mr. Southard manifested pain or discomfort that was noted in his medical charts, when he was agitated, and when he was undergoing surgical procedures under anesthesia (id.), while excluding dates in which the medical record indicated that he was alert and did not indicate being in pain (id.).

Reasons exist for this Court to reexamine its findings about the duration Mr. Southard's pain and suffering.  Substantial justice requires that Plaintiff receive a full recovery for her reasonable damages for Mr. Southard's pain and suffering to avoid manifest injustice.  A new trial, however, is not required, as Plaintiff has not alleged new facts or evidence not introduced at trial (Docket No. 232, Gov't Atty. Decl. ¶ 11) to warrant a renewed trial, but the Judgment here will be amended to prevent manifest injustice.

Plaintiff here closely examined the medical record (despite Defendant's reliance solely on pain monitoring reports within that record), finding instances when Mr. Southard endured pain not otherwise recorded in the pain monitoring reports (see generally Docket No. 224).  In her revised Reply, Plaintiff points out aspects of Mr. Southard's pain and suffering from his confinement, his loss of enjoyment of life, and his loss of independence (Docket No. 261, Pl. Atty. Revised Reply Decl. ¶¶ 4, 5, 10-12).  Despite the sedation reports showing Mr. Southard had "0" or "99" in the pain monitoring reports, Plaintiff

contends that Mr. Southard still suffered from pain and suffering (manifested by drastic weight changes, bedsores, anuria and incontinence, and respiratory issues due to use of the ventilator for the entirety of his hospitalization) (id. ¶¶ 5, 13-29).

Given Mr. Southard's intubation from the outset of his hospitalization, Mr. Southard never used his mouth again to eat or drink after April 2, 2009.  In Hyung Ki Lee v. New York Hospital Queens, 35 Misc.3d 1225(A), 953 N.Y.S.2d 549 (Sup. Ct. Queens County 2012), aff'd sub nom. Hyung Kee Lee v. New York Hosp. Queens, supra, 118 A.D.3d 750, 987 N.Y.S.2d 436, the State Supreme Court accepted plaintiff's argument that because the decedent there could not eat solid food or drink for four days in preparation for a gallbladder surgery that eventually never occurred, that decedent endured pain and suffering.  That court held that decedent's hunger and dry and sticky mouth, coupled with the delay and the pain from the deprivation of treatment, "constitutes pain and suffering of sufficient magnitude as to merit an appreciable component of damages," Hyung Ki Lee, supra, 35 Misc.3d at 1225(A), 953 N.Y.S.2d at 549.  Other courts in New York recognize the inability to eat or drink as a manifestation of conscious pain and suffering, Malki v. Krieger, 213 A.D.2d 334, 334, 624 N.Y.S.2d 167, 169 (1st Dep't 1995) (pain and suffering award, as reduced to $4 million, in medical malpractice action held reasonable compensation including six months plaintiff without an esophagus and connected to feeding tube); Wolfe v. General Mills, Inc., 35 Misc.2d 996, 1000-01, 231 N.Y.S.2d 918, 923 (Sup. Ct. Erie County 1962) (where plaintiff lost senses of taste and smell in accident, denying defense motion to reduce verdict); see also Atkinson v. Buch, 17 A.D.3d 222, 222, 793 N.Y.S.2d 39, 40 (1st Dep't 2005) (dental malpractice action, court increased past

pain and suffering award from $10,000.00 to $75,000.00 where, among other things, plaintiff could only eat through a straw).

Plaintiff also points out that Mr. Southard suffered from back pain and bedsores during parts of the 118 days, from May 3, 2009 (see Docket No. 224, Pl. Atty. Decl. ¶ 72) as well as enduring mental anguish while remaining a prisoner of his body (id. ¶¶ 183, 52).  This Court, however, is disregarding Plaintiff's claim of Mr. Southard undergoing weight change given the factual dispute whether the record correctly indicated his weight (cf. Docket No. 258, Gov't Atty. Decl. ¶ 14).  Finally, despite palliative care given to Mr. Southard, Plaintiff has established that he still suffered conscious pain during his final five days of life (id. ¶¶ 56-58, 182).

As a result, this Court now amends its findings and the Judgment and finds that Mr. Southard endured conscious pain and suffering (or received sedation to alleviate such pain) for the entire 118 days of his hospital stay for various conditions in their totality (such as pain and suffering indicated in Mr. Southard's medical record, inability to eat and drink on his own by mouth, persistent bedsores from May 2009, the consistent administration of sedatives by VAMC staff for the entirety of the hospitalization, and the mental anguish of being imprisoned in his failing body) arising from Defendant's negligence in the treatment of his kidneys.  For example, during Mr. Southard's final days under palliative care, he still lacked the ability to eat and drink by mouth.  Therefore, this Court will not distinguish Mr. Southard's palliative care period from the rest of his hospitalization.

2.  The Rate

Plaintiff does not challenge this Court's methodology in forming a daily rate to quantify damages for Mr. Southard's pain.  Given New York State damages law and to

determine a reasonable compensation by comparing state court judgments, this Court created a formulation, by averaging the amounts awarded in comparable cases that are close to the facts of Mr. Southard's circumstances by the amount of time of hospitalization, Coolidge, supra, 2020 WL 3467423, at *34, 38 (impending death).  Plaintiff did not fault this method for calculation of Mr. Southard's pain and suffering damages (that is averaging the comparable damage awards to a per day rate and multiplying that rate by the number of days Mr. Southard was in conscious pain and suffering).  She disagreed with the comparable cases, disputing the precedent relied upon to calculate that rate.  This Court adheres to the case comparison made in the Decision and Order, Coolidge, supra, 2020 WL 3467423, at *33-34, that led to finding the reasonable rate of $30,000.00 per day, id. at *36, renewing the caveat that Mr. Southard's hospitalization was unique and lacked a true analogy in federal or New York case law.

Plaintiff renews her argument that the cases this Court relied upon are not comparable, but rests upon the Second Department decision of Hyung Kee Lee v. New York Hosp. Queens, supra, 118 A.D.3d 750, 987 N.Y.S.2d 436, concluding that an average of over $1 million per day for the three days of decedent's hospitalization is the reasonable compensation for pain and suffering (Docket No. 252, Pl. Revised Reply Memo. at 10-11).

Plaintiff argues that this Court should not have relied upon the Summary Order from the Second Circuit in Scullari v. United States, Nos. 99-6160(L), 99-6219(XAP), 2000 U.S. App. LEXIS 3416 (2d Cir. Feb. 24, 2000), in establishing reasonable compensation (Docket No. 225, Pl. Memo. at 3-7); cf. Coolidge, supra, 2020 WL 3467423, at *29.  This Court cited Scullari, however, to reject Defendant's notion that Plaintiff had

to establish pain without any sedation in order to recover for Mr. Southard's pain and suffering, Coolidge, supra, 2020 WL 3467423, at *29, acknowledging (as did the Second Circuit in Scullari) that New York courts take into account the degree of sedation the subject endured in assessing pain and suffering awards, id.  This Court, however, did not factor in the damages awarded in Scullari as a comparative to determine Mr. Southard's damages.

Plaintiff distinguished the comparable cases because the duration of loss in these cases was far briefer than Mr. Southard's hospitalization (Docket No. 225, Pl. Memo.at 13-16), a point conceded by this Court, Coolidge, supra, 2020 WL 3467423, at *33, 34. Plaintiff also argues these cases are factually distinguishable (Docket No. 225, Pl. Memo. at 14-16; Docket No. 252, Pl. Revised Reply Memo. at 10).  She cites to bedsore cases in which patients were awarded pain and suffering for enduring less than a month of bedsores (Docket No. 225, Pl. Memo. at 8), O'Connor v. Kingston Hosp., 166 A.D.3d 1401, 1404, 88 N.Y.S.3d 679, 681, 683 (3d Dep't 2018) (upholding judgment awarding $500,000.00, less setoff, for pain and suffering from bedsores for hospitalizations of about a month); Parson v. Interfaith Med. Ctr., 267 A.D.2d 367, 368, 369, 700 N.Y.S.2d 224, 225, 226 (2d Dep't 1999) (reducing award of $1 million to $400,000 for bedsore-related pain and suffering, for an unstated period of hospitalization).

Otherwise, Plaintiff does not suggest a different rate, merely concluding that the damage award should be increased to an unspecified amount, or a new trial ordered (see Docket No. 225, Pl. Memo. at 16, 22).

There is a difficulty in comparing New York cases because of the dearth of analysis as to why a given amount is deemed reasonable compensation in that case.  New York

State appellate courts defer to jury determinations "recognizing that damage awards for pain and suffering are inherently subjective and not subject to precise quantification or formulas," Garrison v. Lapine, 72 A.D.3d 1441, 1443, 900 N.Y.S.2d 770, 772 (3d Dep't 2010); O'Connor, supra, 166 A.D.3d at 1404, 88 N.Y.S.3d at 683.  Often state courts alter verdicts without stating reasons save an appellate court declaration that the amount awarded was not reasonable compensation and choosing another figure presumed reasonable.  A recent decision in Perez gives some insight, with that court factoring in inflation to existing cases to determine the reasonable compensation for past and future pain and suffering, 2020 N.Y. Misc. LEXIS 3549, at *22-28.  Again, there is no strict formula for determining pain and suffering, see, e.g., Garrison, supra, 72 A.D.3d at 1443, 900 N.Y.S.2d at 772.

Despite Plaintiff's arguments, this Court adheres to the case comparisons it made and the averages of damages to form the rate of compensation applicable here.

### 3.  Calculation of Damages

This Court considered the cases cited by Plaintiff in forming the daily rate to compensate for Mr. Southard's pain and suffering.  Plaintiff, however, differs as to the amounts to be applied.  This Court adheres to the daily rate of $30,000.00 as the reasonable value of what Mr. Southard suffered per day, Coolidge, supra, 2020 WL 3467423, at *36.

For example, applying (as Plaintiff argues) Hyung Kee Lee and its average of over $1 million per day for that decedent's suffering to Mr. Southard's pain and suffering (Docket No. 252, Pl. Revised Reply Memo. at 11) would be excessive, leading to over $118 million awarded for the extent of his hospitalization.  Plaintiff herself argues that

24

$10 million would be reasonable for pain and suffering damages (id.) without much analysis how she reached that far lower figure.

With the thus established rate at $30,000.00 per day and duration now found to be the full 118 days of his hospitalization for the several impositions of pain and suffering, Mr. Southard's damages for conscious pain and suffering totals $3,540,000.00.  Plaintiff's Motion (Docket No. 224) for entry of an Amended Judgment is granted in part.

### C.  Fear of Impending Death

Damages for fear of impending death is a subset of a decedent's pain and suffering, see 1B N.Y. PJI 2:320, at 1025 (3d ed. 2020) (caveat 3, compensating injuries sustained by decedent before he or she died, the estate may recover "pre-impact terror"); Matter of 91st St. Crane Collapse Litig., 154 A.D.3d 139, 153, 62 N.Y.S.3d 11, 21 (1st Dep't 2017).  Compensation in this vein is for contemplation of one's impending death not eventual mortality or possible death.  It is "designed to compensate the decedent's estate for the fear the decedent experienced during the interval between the moment the decedent appreciated the danger resulting in the decedent's death and the moment the decedent sustained a physical injury as a result of the danger," 1B N.Y. PJI 2:320, at 1025; see Vatalaro v. County of Suffolk, 163 A.D.3d 893, 894-95, 81 N.Y.S.3d 441, 443 (2d Dep't 2018) (quoting PJI); Matter of 91st St. Crane Collapse Litig., supra, 154 A.D.3d at 153, 62 N.Y.S.3d at 21-22.  "There must be some evidence that the decedent perceived the likelihood of grave injury or death before the impact, and suffered emotional distress as a result," Matter of 91st St. Crane Collapse Litig., supra, 154 A.D.3d at 153, 62 N.Y.S.3d at 21-22.

This Court found that Mr. Southard was aware of his <u>impending</u> death on July 16, rather than earlier when his kidneys were "killed" (as Plaintiff terms it) or from the start of his 118 days of hospitalization.    Plaintiff renewed her argument that Mr. Southard contemplated his death from April 2009 (when VA medical staff concluded that he was "ready to learn") or from May 20, 2009, when he talked with Sonny Southard realizing that Defendant killed his kidneys and effectively "f'ing killed" him.   This is distinct from the general pain and suffering Mr. Southard endured (<u>cf.</u> Docket No. 232, Gov't Atty. Decl. ¶ 24).   Plaintiff, however, does not specify when the kidneys were "killed" (<u>cf.</u> Docket No. 238, Pl. (Initial) Reply Memo. at 22), either during the April 1 operation or when it became clear that the kidneys would not heal, and Mr. Southard would require permanent dialysis.   Plaintiff has not pointed to evidence of Mr. Southard being aware of his grim prognosis from April 8 (<u>see</u> Docket No. 257, Gov't Sur-Reply Memo. at 13).

Mr. Southard's son, Sonny, testified that at some unspecified period, Mr. Southard was told about the condition of his kidneys and mouthed "oh, my God, they F'ing killed me," <u>Coolidge</u>, <u>supra</u>, 2020 WL 3467423, at *11.   Plaintiff now argues this occurred on May 20 (Docket No. 261, Pl. Atty. Revised Reply Decl. ¶¶ 33, 42, citing Docket No. 155, Sonny Southard Tr. at 60; Docket No. 157, Dr. Lall Tr. of Mar. 29, 2018, at 109; Jt. Tr. Ex. 113, Bates #6938 (anesthesia post-op note, May 15, 2009).   But Dr. Lall's testimony referred to Mr. Southard not wanting to continue dialysis in June 2009 and declining further treatment in July while still wanting full resuscitation (Docket No. 157, Dr. Lall Tr. of Mar. 29, 2018, at 107-10).

Either when Defendant purportedly "killed" the kidneys or when Mr. Southard mouthed his reaction are immaterial.   For the fear of impending death claim, Plaintiff had

to establish when Mr. Southard was aware of his imminent mortality, see Matter of 91st St. Crane Collapse Litig., supra, 154 A.D.3d at 153, 62 N.Y.S.3d at 21-22.  This differs from when he became aware of the extent of his injury that caused the mortality occurred.

Plaintiff next argues that Mr. Southard was "ready to learn" on April 8 (Docket No. 261, Pl. Atty. Revised Reply Decl. ¶ 31, citing Jt. Tr. Ex. 113, Bates #7523-24).  The cited medical record, however, is a fall risk assessment.  In other parts of Mr. Southard's medical record, there was a Learning Needs Review which noted Mr. Southard had "no barriers" to learning prior to the surgery on March 26, 2009, but later was unable to respond and to grasp concepts on April 18, 2009 (Jt. Tr. Ex. 113, Bates #7346, Apr. 18, 2009).  The April 8, 2009, notation was education about orientation of time and place and explanation of procedures (id. Bates #7346).  This Court reviewing Mr. Southard's progress notes for April 8 did not note education on his condition or mortality.

By April 8, VAMC doctors themselves had not concluded that Mr. Southard imminently faced death.  Thus, the record does not discuss Mr. Southard was ready to learn and what he was ready to learn in April 2009.  Prior to July 16, VAMC medical staff held out hope that Mr. Southard could survive on dialysis.  Initially, dialysis was thought to be temporary as he recovered from the surgery (Docket No. 151, Dr. Dosluoglu Tr. at 78; Docket No. 157, Dr. Lall Tr. of Mar. 29, 2018, at 42).  Doctors then concluded that Mr. Southard would have to remain on dialysis for the duration of his life (see Docket No. 155, Sonny Southard Tr. at 56, 57).

Plaintiff cites to Mr. Southard's anxiety on May 14, 2009, that he was aware as of that date of his "deplorable condition and was fearful of his demise" (Docket No. 224, Pl. Atty. Decl. ¶ 128).  While the medical record noted Mr. Southard's anxiety and their

medication to treat it (see id. ¶¶ 124, 127), the evidence did not state that this anxiety arose from his fear of death or of impending death.  Plaintiff's allegation of Mr. Southard's fear of his demise at this period is speculative on Plaintiff's part.  Again, the only evidence of Mr. Southard possibly considering his mortality while hospitalized is Sonny Southard's testimony that his father learned (at some unspecified date) that Defendant had "killed" his kidneys and Mr. Southard thus would have to remain on dialysis (Docket No. 155, Howard "Sonny" Southard Tr. at 60 (Mr. Southard mouthing "oh, my God, they F'ing killed me"); see Docket No. 205, Pl. Am. Proposed Findings of Fact ¶¶ 346-48), Coolidge, supra, 2020 WL 3467423, at *11.

There is evidence of Mr. Southard's reactions to learning that he had to remain on dialysis and that he feared his imminent death if dialysis were terminated.  These are two distinct matters.  On June 15 and 16, 2009, Mr. Southard indicated that he did not want to continue on dialysis but then apparently did not realize he had kidney failure.  Upon being advised of the necessity of dialysis for his survival, he agreed to continue dialysis. (Docket No. 197, Gov't Proposed Findings of Fact ¶ 162; Jt. Tr. Ex. 113, Bates #5561-63 (June 16, 2009, psychological consult notes); Docket No. 172, Dr. Lall Tr. at 23-26; Jt. Tr. Ex. 113, Bates #6330 (June 18, 2009, progress note).)  On July 22, 2009, Plaintiff was included in a family conference where Dr. Lall told them that further dialysis would be futile given his infections, Coolidge, supra, 2020 WL 3467423, at *20-21.

Plaintiff now argues that Mr. Southard knew (at the latest) on June 15, 2009, that if he were taken off dialysis it would lead to his death (see Jt. Tr. Ex. 113, Bates #6338, 6348-49, 6364).  On that day, Dr. Lall noted that Mr. Southard stated that Mr. Southard no longer wanted renal support (Jt. Tr. Ex. 113, Bates #6364).  On June 16, 2009, was

the earliest Mr. Southard was aware of his mortality, or at least his need for dialysis to continue to live.  Dr. Lall talked with Mr. Southard, who was awake and alert, explaining to him "about his hospital course thus far, and that HD [dialysis] is life saving, he became very emotional" (Docket No. 238, Pl. Atty. Reply Decl. ¶ 23; Jt. Tr. Ex. 113, Bates #6338). Mr. Southard repeated his statement that he no longer wanted to be on dialysis (Jt. Tr. Ex. 113, Bates #6348-49).  He stated that he understood that he suffered from kidney failure (id.).  The neuropsychologist Dr. Kerry Donnelly, Ph.D., however, noted that Mr. Southard's awareness of his condition was "somewhat equivocal in his understanding of his kidney disease," at first stating that he was uncertain whether he knew he had kidney failure and later responded that he knew (Jt. Tr. Ex. 113, Bates #6348). Mr. Southard repeated and forcefully stated that he wanted to end dialysis, indicating that "he knows what dialysis is" (id.).  He affirmed that he wanted to be comfortable without dialysis (id.).  "Despite these consistent responses opposing dialysis, he also repeatedly indicated that he does not want to make his own decisions about treatment and wants his daughter to make them for him" (id.).  Mr. Southard also wanted to remain on a ventilator (id.).  Dr. Donnelly also observed that while Mr. Southard appeared able to make healthcare decisions but his capacity "clearly waxes and wanes" (id., emphasis in original removed).  Therefore, there is an inconsistency, that Mr. Southard wanted only to end dialysis but without terminating his life and that he did not necessarily understand his mortality if dialysis ended.

Plaintiff has not shown Mr. Southard manifested fear of his impending demise between June 16 and July 16, 2009.  Again, the standard is fear of his imminent death. Instead, Plaintiff established a distress of four weeks in June and July 2009 that cannot

be distinguished from other sources of anguish and anxiety compensated generally for Mr. Southard's pain and suffering.

As his sepsis worsened in July 2009, however, it became clear that Mr. Southard remaining on dialysis was counterproductive (Docket No. 156, Tona Williams Tr. at 111-12, 113, 44; Docket No. 155, Sonny Southard Tr. at 73). On July 15, Mr. Southard had another discussion with hospital ethicist Dr. Donnelly about his condition, stating that he no longer wanted to be kept alive by artificial means (Docket No. 197, Gov't Proposed Findings of Fact ¶ 176; Jt. Tr. Ex. 113, Bates #5529-30). This is the earliest expression that his life hinged on whether he remained on dialysis. Before this, the discussion was whether Mr. Southard understood what dialysis was and whether he realized he had kidney failure and his equivocal answers. It was then that Mr. Southard thus had awareness that he was being sustained by artificial means. But it was the next day, when confronted with what would occur if those artificial means were ceased, Mr. Southard was "floored" by the prospect (Docket No. 197, Gov't Proposed Findings of Fact ¶ 177; Jt. Tr. Ex. 113, Bates #6015-17). Mr. Southard acknowledged on July 16 that without dialysis he might possibly die (Docket No. 197, Gov't Proposed Findings of Fact ¶ 177; Jt. Tr. Ex. 113, Bates #6016). This is the point when his fear of impending death commenced. This belies Plaintiff's argument that earlier Mr. Southard had the impression of his imminent death, because his condition was not dire, or he did not know what would happen to him if dialysis ceased.

The cases cited by Plaintiff (Docket No. 225, Pl. Memo. at 16-21) for recovery for the fear of impending death did not involve prolonged periods of time (beyond hours) or contemplation running from the beginning of protracted hospitalization. These cases are

examples of the typical catastrophic injury leading to nearly instantaneous death, Matter of 91st St. Crane Collapse Litig., supra, 154 A.D.3d at 153-54, 62 N.Y.S.3d at 21-22 (crane collapse and fall of victims, reducing jury award of $7.5 million to each estate for preimpact terror to $2.5 million and $2 million respectively); Dowd v. New York City Transit Auth., 78 A.D.3d 884, 885, 911 N.Y.S.2d 460, 461-62 (2d Dep't 2010) (decedent hit by reversing bus twice, seeing bus and attempting to get out of the way, dying over an hour and a half after the collision, holding award for conscious pain and suffering deviated from what was deemed reasonable compensation, reducing $1.75 million awarded to $1.2 million or ordering new trial); DeLong v. Erie County, 89 A.D.2d 376, 455 N.Y.S.2d 887 (4th Dep't 1982) (12 minutes of pain, suffering, and fear of impending death by murdered housewife), aff'd, 60 N.Y.2d 296, 469 N.Y.S.2d 611 (1983); Campbell v. Diguglielmo, 148 F. Supp. 2d 269, 273, 276 (S.D.N.Y. 2001) (shooting of decedent where decedent look horrified and yelled no at shooter before being shot, then conscious a short time after being shot); McIntyre v. United States, 447 F. Supp. 2d 54, 119 (D. Mass. 2006) (decedent first strangled and then asked if he preferred being shot, decedent choosing to be shot)(Docket No. 225, Pl. Memo. at 16-20).  See also Vatalaro, supra, 163 A.D.3d at 893-94, 895, 81 N.Y.S.3d at 442, 443 (not cited by Plaintiff here), where the court reduced the pre-impact terror award from $250,000.00 to $50,000.00 in decedent's motor vehicle accident for one second of eye contact with the colliding bus driver.  Compared with Mr. Southard's circumstances, these cases are nearly instantaneous pre-impact terror, see 1B N.Y. PJI 2:230, at 1025, in contrast to Mr. Southard's days near the end knowing his fate.

This Court has found no case of a decedent with prolonged knowledge (whether days or weeks, as Plaintiff argues) of their eventual death like Mr. Southard.   The Government also argued that two of Plaintiff's cases, Campbell, supra, 148 F. Supp. 2d 269, and McIntyre, supra, 447 F. Supp. 2d 54, are irrelevant because Campbell was factually distinguishable from Mr. Southard's circumstances (Docket No. 231, Gov't Memo. at 15-16), with Campbell involving a shooting of the decedent leading to his death (id.).  This Court agrees that Campbell is factually distinguishable, both from the manner of death and the amount of time the victim could have contemplated his demise.  The Government also urges McIntyre be rejected because Plaintiff should have argued that case in her earlier post-trial submissions rather than taking the second bite of the apple to argue it now on reconsideration (id. at 16), hence waiving that argument.   Giving McIntyre consideration, this Court finds that it is factually distinguishable from this case again due to the manner of death and the duration of time the decedent had to consider his demise.

Plaintiff also distinguishes Arias v. State, 33 A.D.3d 951, 822 N.Y.S.2d 727 (2d Dep't 2006), because that case did not involve the fear of impending death and that decedent suffered less pain than Mr. Southard did (Docket No. 225, Pl. Memo. at 22; Docket No. 252, Pl. Revised Reply Memo. at 10).  This Court, however, did not cite Arias for that damage claim, Coolidge, supra, 2020 WL 3467423, at *33, 34; that case was cited for holding that conscious pain and suffering is recoverable and used its formulation to devise the reasonable damage award for Mr. Southard, id. at *34.

Plaintiff also factually distinguishes Mancuso v. Kaleida Health, 172 A.D.3d 1931, 100 N.Y.S.3d 469 (4th Dep't), aff'd, 34 N.Y.3d 1020, 114 N.Y.S.3d 502 (2019), because

the decedent there did not face the same choice that Mr. Southard did (Docket No. 252, Pl. Revised Reply Memo. at 10).  Again, this Court concedes that there is no other case on fours with Mr. Southard's hospitalization and death, Coolidge, supra, 2020 WL 3467423, at *33, in the duration and extent of pain and suffering endured by a decedent. This Court notes that Plaintiff originally cited to Mancuso as a comparative (Docket No. 200, Pl. Proposed Conclusion of Law ¶ 158) although noting that Mr. Southard experienced longer and more pain than the decedent in Mancuso (id. ¶¶ 159, 160 (no indication the decedent in Mancuso lost his ability to speak)).  Plaintiff had concluded that if this case and Mancuso were deemed equivalent, "Mr. Southard's pain and suffering alone of $3 million, given that Mr. Southard experienced exactly three (3) times the length of pain and suffering" (id. ¶ 161).

The sole case in New York law involving more than instantaneous acknowledgement of impending death is Mancuso, also arising in a medical malpractice context where decedent had about a month from diagnosis of symptoms to his death which the Fourth Department included having "thoughts of her impending death," 172 A.D.3d at 1936, 100 N.Y.S.3d at 474.  This Court relied on Mancuso (among other New York cases) as "informative in quantifying the pain and suffering Mr. Southard endured for the 118 days of his hospitalization (despite Mancuso post-dating Southard's hospitalization)," Coolidge, supra, 2020 WL 3467423, at *34.  Factually, the decedent in that case is the closest to what Mr. Southard endured during the last weeks of his hospitalization.

Extrapolation of damages in Plaintiff's cited comparative cases with close to applicable facts from moments or days impending death case, e.g., DeLong, supra,

89 A.D.2d 376, 455 N.Y.S.2d 887 (Docket No. 225, Pl. Memo. at 17), to weeks or (if accept Plaintiff's view, 118 days) Mr. Southard contemplated his demise, is not reasonable compensation and would lead to an excessive recovery for Plaintiff. As noted above, New York appellate courts have reduced these pre-impact terror awards, e.g., Vatalaro, supra, 163 A.D.3d at 893-94, 895, 81 N.Y.S.3d at 442, 443; Matter of 91st St. Crane Collapse Litig., supra, 154 A.D.3d at 154, 62 N.Y.S.3d at 22 ($7 million verdict reduced to $2.5 million and $2 million) (cf. Docket No. 225, Pl. Memo. at 16-17).

Therefore, this Court **reaffirms** that the evidence shows that Mr. Southard only knew on July 16, 2009, that he would not survive, and that continued dialysis would have been futile, Coolidge, supra, 2020 WL 3467423, at *37. While Mr. Southard was anxious prior to that (and that anxiety is covered by another form of awarded damages), there is no evidence that this earlier anxiety was due to his impending death or Mr. Southard's realization of his impending death during the entirety of his 118-day hospitalization. Plaintiff has not produced evidence that Mr. Southard contemplated his death during the entirety of his stay. To find otherwise would be sheer speculation.

Therefore, the damage award for Mr. Southard's consciousness of his impending death of $366,663.00, as previously calculated, id. at *38, remains as found by this Court. Plaintiff's Motion to Alter or Amend the Judgment on this form of relief (Docket No. 224) is denied.

D.  Plaintiff's Total Damages

Plaintiff does not challenge the other aspects of the damages award (or disputed by the Government) also remain as previously found. As a result of consideration of Plaintiff's Motion to Alter or Amend the Judgment (id.), Plaintiff's award for Mr. Southard's

pain and suffering is now $3,540,000.00; the award for his consciousness of his impending death remains at $366,663.00; his funeral expenses and losses by his decedents are unchallenged and remain at a total of $8,773.64.  Therefore, Plaintiff's Motion to Alter or Amend the Judgment (Docket No. 224) is granted and the total damages is now $3,915,436.64.

## IV.   Discussion of Plaintiff's Amended Bill of Costs (Docket No. 235, Ex. A)

Finally, Plaintiff submitted (Docket No. 226) and then amended (Docket No. 235, Ex. A) her Bill of Costs.  She now seeks to recover $14,643.73 in costs.  The Government objects on several discrete grounds, ultimately concluding that Plaintiff is entitled only to $12,062.43 (Docket No. 242, Gov't Atty. Sur-Reply Decl. ¶ 30).  As amended, the parties differ over $2,581.30 in claimed costs.

### A.  Applicable Standards for Recovery of Costs

Under Federal Rule of Civil Procedure 54(d)(1), costs may be imposed against the United States "only to the extent allowed by law."  Section 1920 of 28 U.S. Code provides the taxable costs allowed generally and this Court by Local Civil Rule provides guidance on imposition of costs, W.D.N.Y. Loc. Civ. R. 54.  (Docket No. 228, Gov't Memo. at 1-2.) The Court Clerk assesses Plaintiff's costs based upon Plaintiff's declaration, information within the Clerk's special knowledge, and the Government's objections, see 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2679, at 492-93 (Civil 2014).  The Court Clerk awaited this Court's action on this Bill of Costs.  This Court's Guidelines for Bills of Costs recognize as taxable "only those costs specifically mentioned in 28 U.S.C. §§ 1920, 1921, and 1923," W.D.N.Y. Guidelines for Bills of Costs ("Guidelines") Part II.A.

The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested, Anello v. Anderson, 191 F. Supp. 3d 262, 285 (W.D.N.Y. 2016) (Skretny, J.); Baker v. Power Sec. Corp., 174 F.R.D. 292, 294-95 (W.D.N.Y. 1997) (Larimer, C.J.) ("The burden is therefore upon the party seeking costs to provide adequate documentation of its costs, and a failure to do so may result in the costs being reduced or denied.") (id. at 2-3). A party is not entitled to recover costs when its application fails to provide substantiation for the costs sought, see Mendez v. Radec Corp., 907 F. Supp. 2d 353, 360 (W.D.N.Y. 2012) (Telesca, J.) (denying costs that were "not adequately explained through Plaintiffs' submission"); Douyon v. N.Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) ("[W]ith this record, the Court has no way of confirming that these costs . . . were incurred by counsel.").

As for Plaintiff's claimed costs, the filing fees of the Clerk and service fees are recoverable, 28 U.S.C. § 1920(1); Guidelines, Part II.B.a. Also recoverable are the fees for taxable printed and electronically recorded transcripts necessarily obtained for use in the case, under 28 U.S.C. § 1920(2), Guidelines Part II.D.1.c. Included as necessarily obtained transcripts are transcripts of deposition of a party to the case, id., Part II.D.(1)(c), transcripts admitted into evidence or used at trial, id., Part II.D.1.e., and transcripts of deposition of person who testifies at trial, id., Part II.D.1.d. For allowable costs, the prevailing party needs to produce an invoice or bill stating the transcript prepared, the number of pages, the per page rate charged, and the total cost, id., Part II.D.3.

Copying of any materials where the copies are necessarily obtained for use in the case also are recoverable, 28 U.S.C. § 1920(4); Guidelines Part II.H.1., and are taxed at

the lesser of actual costs and this Court's published schedule of permitted rates, Guidelines Part II.H.1.

The Guidelines also allow recovery of witness fees including mileage, subsistence, and travel by witness, and statutory attendance fees, Guidelines, Part II.F.1.; see 28 U.S.C. § 1821(b) (attendance fee).

Non-taxable costs include secretarial services including copying charges, and office overhead, Guidelines, Part III. Non-Taxable Costs 3., 11. Costs incurred in teleconferencing a deposition also are excluded, id., Part II.D.2.c. Also excluded are costs related to preparing exhibit binders, absent prior Court approval, prior agreement of the parties, or a showing of necessity, id., Part II.H.2.c. All other requested costs are denied if not mentioned in 28 U.S.C. §§ 1920, 1921, or 1923, Guidelines, Part II.A.

### B.  Undisputed Costs

The parties do not dispute Plaintiff recovering for payment of Clerk's fees ($350.00, Docket No. 245, Pl. Response at 7; see Docket No. 242, Gov't Atty. Decl. ¶ 30), Guidelines Part II.B.a., and costs for service of the Summons and subpoena ($70.00), totaling $420.00. The Government also accepted certain claimed costs, as discussed in specific categories below.

### C.  Transcript Costs

#### 1.  Original Transcription Costs

Taking each remaining contested cost in turn, Plaintiff initially claimed incurring $10,248.93 in transcription costs (Docket No. 226, Ex. A). The Government first identified the problems and omissions in Plaintiff's initial claim to recoup her transcription fees (Docket No. 228, Gov't Memo. at 3-9). The Government noted errors in the chart

summarizing transcription costs, among other errors (Docket No. 228, Gov't Memo. at 6, 7).  The Government argued that Plaintiff did not obtain this Court's prior approval for the more expensive, expedited transcript (id. at 8; see Docket No. 241, Gov't Sur-Reply Memo. at 2-3).

In her reply and as amended in her Bill of Costs, Plaintiff now seeks a total of $9,143.90 for transcription costs (Docket No. 235, Pl. Atty. Reply Decl. ¶ 21, Ex. A, Am. Bill of Costs).  She notes the typographical error in a summary chart in support of the Bill indicating the incorrect date of Dr. Gillespie's transcribed deposition (Docket No. 235, Pl. Atty. Reply Decl. ¶ 11).  She also submitted revised summaries of the amounts claimed by court reporters (id. ¶ 15).  Plaintiff contends that the invoices she submitted verifies her paid expenses (id. ¶ 13).  Plaintiff claims the maximum transcript rate of $3.65 per page (id. ¶ 16) for ordinary transcripts.  Plaintiff needed the transcript from the March 8, 2018, proceeding for the text of evidentiary rulings and daily transcripts of the testimony of her expert, Dr. Muhs (id. ¶¶ 17, 18).

Plaintiff also renews her claim to recoup the costs for Dr. Khan's transcript, which was read into the trial on two occasions (Docket No. 235, Pl. Atty. Reply Decl. ¶¶ 6-8). She claims that the deposition transcripts from Drs. Lall, Dosluoglu, and Gillespie were necessarily obtained for use in the case pursuant to Part II.D.1. of this Court's Guidelines, these transcripts were from a party in this case, and were used at trial for impeachment (id. ¶¶ 10, 11).

Finally, she claims the fee for contemporaneous transmission from a remote location under Federal Rule of Civil Procedure 43, for $270.00 (id. ¶ 20).

In its Sur-Reply, the Government objects to the rates charged for some of the transcripts (Docket No. 242, Gov't Atty. Decl. ¶ 17), and charging the costs for transcribing the March 2018 oral Decision and Order (id. ¶ 12).

First, by not challenging certain transcription charges, the Government accepts the total of transcription charges of $3,113.90 for deposition and trial testimony, admitted into evidence, see Guidelines Part II.D.1.d., e.  Thus, this Court accepts Plaintiff's claim for this uncontested amount.

Second, for recovery of 2012 deposition transcription of Drs. Kahn, Dosluoglu, and Lall, the Government raises no objection to the rate charged by court reporter Jack W. Hunt; as amended, Plaintiff claims $3.65 per page for transcription.  These three doctors were involved in Mr. Southard's surgery and subsequent care.  Their testimony was necessarily obtained for this case, 28 U.S.C. § 1920(2); W.D.N.Y. Guidelines for Bills of Costs Part II.D.1.  Plaintiff's claimed cost here, totaling $3,066.00, is thus accepted.

Third, the Government objects to daily transcription (and its costs) for the trial testimony of Plaintiff's expert, Dr. Muhs of October 11, 2018.  Dr. Muhs testified on October 11, 2018, and Plaintiff then rested (Docket Nos. 169 (transcript), 166 (minutes); Docket No. 242, Gov't Atty. Decl. ¶¶ 14-17).  Plaintiff did not seek prior approval for daily transcription.  After Dr. Muhs' testimony, the trial resumed about a month later, on November 14, 2018, with the Government calling its expert witness, Dr. Gillespie, and then resting its case (Docket Nos. 178 (minutes), 182 (transcript)). Thus, there was no need for daily transcription.

Under the Guidelines for Bills of Costs, the cost of daily or expedited copy of transcripts procured solely for the convenience of counsel and absent prior approval of this Court are not taxable, Guidelines Part II.D.2.a.

This differs case from <u>Bartels</u>, cited by Plaintiff (Docket No. 245, Pl. Response ¶¶ 9-10), where defendants sought transcription of the first five days of testimony of the principal parties on both sides during a three-week trial, 2012 WL 181633, at *3.  The court then had witnesses refer to that prior testimony and that testimony subsequently came into evidence, <u>id.</u> at *4.

In the case at bar, a quick review of the timeline for the trial shows there were few stretches of continuous trial days that might have warranted daily transcription (despite Plaintiff not seeking it in advance).  While Dr. Muhs' testimony was referenced in cross-examination of Dr. Gillespie's testimony (<u>see</u> Docket No. 182, Trial Testimony of Nov. 14, 2018, Tr. at 27, Dr. Gillespie stating that he reviewed Dr. Muhs' trial testimony), Dr. Gillespie testified about four weeks later, sufficient time for normal production of transcription.

Plaintiff's request for the higher expedited transcription rate is denied.  Instead of the $6.05 per page expedited rate charged, Plaintiff recovers the regular transcription rate of $3.65 per page, or $627.80 as urged by the Government (Docket No. 242, Gov't Atty. Decl. ¶ 17).  This Court agrees with the Eastern District of New York in <u>Bartels</u>, <u>supra</u>, 2012 WL 181633, at *2, that daily transcription of trial testimony is not customary and "notes that the determination of 'necessarily obtained' transcripts is a [case-by-case], fact-sensitive inquiry."

Fourth, the Government also objects to the rates charged for the reading of Dr. Khan's deposition testimony during the trial on May 30 and June 5, 2018.  The parties differ on the number of transcribed pages (Plaintiff claiming 345 pages, the Government a total of 297 pages, compare Docket No. 235, Exs. I, L with Docket No. 242, Gov't Atty. Decl. ¶ 17).  The Government's pagination is reflected in Jack W. Hunt's invoices submitted by Plaintiff (Docket No. 235, Ex. I, at 19-20), adding together the first volume of 182 pages and the second volume of 115 pages to total 297 pages (Docker No. 242, Gov't Atty. Decl. ¶ 17; citing Docket No. 235, Pl. Ex. I, at 19-20).

Dr. Khan's deposition testimony was read into the trial record on May 30 and June 5, 2018.  One possible explanation for the pagination discrepancy is that Plaintiff is citing to the original number of pages in Dr. Khan's deposition testimony (cf. Docket No. 235, Pl. Ex. 1, at 2, invoice for July 17, 2012, deposition of Dr. Khan, 345 pages) and not the number of pages from the court reporter's re-recording of it during the trial.  This Court therefore adopts the number of pages and the cost total the Government urges, or 297 pages at $3.65 per page totaling $1,084.05.  Plaintiff, however, still recovers for the transcription of the 345 pages of deposition in 2012.

### 2.  Dr. Nader's Transcript

Fifth, in Sur-Reply, the Government also objects to the addition of transcript costs for the July 18, 2012, deposition of Dr. Nader Djalal Nader, of $193.45, whose testimony was not used in the trial (Docket No. 242, Gov't Atty. Decl. ¶¶ 10-11).  Plaintiff argued that Dr. Nader was added to the table of witnesses because she participated in, hence was a witness to, Howard Southard's April 1, 2009, surgery (Docket No. 235, Pl. Atty. Decl. ¶ 15, Ex. L, correcting Docket No. 226, Pl. Atty. Decl., Ex. A).  Dr. Nader was the

anesthesiologist for Mr. Southard's surgery as they placed the central line in Mr. Southard after the failed EVAR operation and was Operation Room Manager (Docket No. 245, Pl. Response ¶¶ 4, 5, Ex. B, Dr. Nader EBT Tr., Ex. C, Dr. Dosluoglu EBT Tr. at 56).  In her further Response, Plaintiff contends that, despite not introducing Dr. Nader's testimony at trial, Plaintiff deems Dr. Nader to be an officer of the VAMC, hence her deposition was necessary for the case and the costs should be recouped (id. ¶¶ 4-8, Ex. A).

Plaintiff, however, never introduced Dr. Nader's deposition testimony into the case although that transcript was listed as a joint trial exhibit (Docket No. 193, Third Amended Joint Trial Exhibit List, Exhibit 3).  That testimony was not used in cross-examination. Plaintiff never referred to Dr. Nader in the proposed finding of fact (Docket No. 205) or in responding to the Government's proposed findings of fact (Docket No. 219).  While Dr. Nader worked for the VAMC and served as Operation Room Manager, she was not identified as a representative of Defendant to be considered a party to this case to have coverage for transcription costs.  The testimony of the anesthesiologist for Mr. Southard's surgery or the Operation Room Manager is not necessary.  Plaintiff fails to show that Dr. Nader's testimony was used during the trial to justify taxation of this transcription costs.

Plaintiff's cases (Docket No. 245, Pl. Atty. Sur-Reply ¶¶ 6-7) for including the deposition transcript cost are distinguishable.  Both cases are from other districts and are not based on this Court's "Guidelines for Bills for Costs."  In Fields v. General Motors, supra, 171 F.R.D. at 235-36 (id. ¶ 6), the Northern District of Illinois held that defendant's deposition of plaintiff's accountants, officers and/or shareholders were necessary for use in the case and the evidence was calculated to elicit admissible evidence despite not

using it for a successful motion for summary judgment.  Citing Seventh Circuit precedent, the court held that deposition transcripts that were not used in a motion for summary judgment remain reasonably necessary, id. at 235, quoting Barber v. Ruth, 7 F.3d 636, 645 (7th Cir. 1993).  Since these depositions were to elicit evidence in an admissible form, the court accepted that they were "'necessarily obtained for use in the case,'" Fields, supra, 171 F.R.D. at 236, quoting 28 U.S.C. § 1920(2).  Plaintiff here has not established that Dr. Nader's testimony is necessary for prosecution of this case.

The Eastern District of New York in Bauta (id. ¶ 7) awarded in part plaintiffs' claim for deposition transcription costs, 2019 WL 8060181, at *4-5.  Under the Eastern District of New York Local Rule 54.1, "unless otherwise ordered by the court, the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety," see Bauta, supra, 2019 WL 8060181, at *4 (E.D.N.Y. June 17, 2019) (Reyes, Mag. J.); E.D.N.Y. Local Rule 54.1(c)(2).  Costs for depositions "taken solely for discovery are not taxable," E.D.N.Y. Loc. R. 54.1(c)(2).  "Use" under this rule was not limited to deposition testimony admitted at trial but it also included "the costs of deposition transcripts not used at the trial where they 'appear to have been reasonably necessary to the litigation at the time they were taken,'" id. at *4 (quoting Palm Bay Int'l, Inc. v. Marchesi DiBando S.P.A., 285 F.R.D. 225, 238 (E.D.N.Y. 2012)).  The court parsed that plaintiffs' Bill of Costs for deposition transcripts, granting only the costs for the original and one copy of depositions for witnesses relevant to prevailing claims, id. at *4-5.

Both this Court's Guidelines and the Eastern District of New York Rule 54.1 focus on whether the transcript used or reasonably necessary for the case, specifically at trial.

Transcription of depositions for discovery purposes are not taxable under either court's rules, E.D.N.Y. Loc. Civ. R. 54.1(c)(2); see generally W.D.N.Y. Guidelines Part II.D.1. (listing taxable transcript fees). The Government had not identified Dr. Nader as a designated representative under Federal Rule 30(b)(6) to deem her a "party" to allow her transcript to be taxed, despite Dr. Nader being Operation Room Manager. Plaintiff failed to specify the role of the Operation Room Manager to have her deemed a representative of VAMC (see also Docket No. 150, Dr. LeVaughn Tr., Mar. 8, 2018, at 4 (Plaintiff failed to establish Dr. Lall was a managing agent of the hospital to admit his deposition testimony under Fed. R. Civ. P. 32(a)(3); Docket No. 235, Pl. Ex. G, Tr. at 3 (rough draft; same)). As she failed to establish the chief of vascular surgery was a "managing agent" for Rule 32(a)(3) (id.), Plaintiff has not established that the Operation Room Manager is the "managing agent" for the VAMC. Recovery for the costs of the transcription of Dr. Nader is denied.

### 3.  Costs of Evidentiary Ruling Transcript

Sixth, the Government also objects to taxing the costs for transcribing this Court's March 8, 2018, evidentiary ruling (at $18.30) (Docket No. 242, Gov't Atty. Decl. ¶ 12; see Docket No. 139, minutes Mar. 8, 2018, proceedings; see also Docket No. 150, Dr. LeVaughn Tr. at 1-7) because it was not procured either by Order or upon the stipulation of the parties (Docket No. 228, Gov't Memo. at 8). This cost is allowed (nunc pro tunc) because the oral ruling set the procedures for conduct of the trial. Transcription thereof assisted Plaintiff in her conduct of the trial (see Docket No. 235, Pl. Atty. Reply Decl. ¶ 17), as well as potentially assisting the Government. This cost therefore is allowed.

4.  Esquire Deposition Solutions

Seventh and finally, the Government objects to $270.00 charged by Esquire Deposition Solutions for long distance video trial testimony of Dr. Purandath Lall from March 29, 2018 (Docket No. 28, Gov't Memo. at 9; see Docket No. 157, Tr. Mar. 29, 2018, at 5).  Initially, the Government objected to lack of substantiation for the charge (Docket No. 228, Gov't Memo. at 9; see also Docket No. 241, Gov't Reply Memo. at 4), then the Government argues that the charge was improper because it was not for electronically recorded transcript (Docket No. 242, Gov't Atty. Decl. ¶ 19).

Plaintiff responds that the cost for "contemporaneous transmission from a remote location" was cheaper than having Dr. Lall come to Buffalo to testify (Docket No. 235, Pl. Atty. Reply Decl. ¶ 20).

On March 8, 2018 (part of the transcribed oral Decision and Order Plaintiff now wants recovered as a cost), this Court ruled that Plaintiff could either admit Dr. Lall's live testimony or his deposition but not both (Docket No. 150, Dr. LeVaughn Tr. at 5).  Prior to that decision, this Court noted that generally a video conferencing "must be near the witness, either at a compatible courthouse, and that make things a little bit easier and less expensive, or through some other means.  That would mean you have to make the arrangements for that" (id. at 3).  Plaintiff then decided to call Dr. Lall as a live witness, but appearing remotely.  There is no record of Plaintiff in arranging this testimony seeking prior approval to recover her expenses in having Dr. Lall's contemporaneous transmission of his testimony.

On March 29, 2018, Dr. Lall testified by video conference (Docket Nos. 149 (minutes), 157 (transcript)).  Dr. Lall, Plaintiff's counsel, and counsel for the Government

appeared at the conference room of Esquire Deposition Solutions in West Palm Beach, Florida (Docket No. 157, Tr. Mar. 29, 2018, at 4-5).  From review of that transcript, the $270.00 seems to be for rental of the conference room for Dr. Lall's testimony.  Esquire Deposition Solutions did not record or transcribe the testimony or transmit the testimony.  Plaintiff did not seek prior approval

Federal Rule of Civil Procedure 43(a) requires witness testimony in open Court (unless a federal statute, the Federal Rules of Evidence, the Federal Rules of Civil Procedure or other rules provide otherwise) and for good cause in compelling circumstances allow "testimony in open court by contemporaneous transmission from a different location."  Plaintiff apparently used Rule 43(a) to have Dr. Lall testify remotely with contemporaneous transmission from Florida.

This Court's Guidelines are silent as to the taxability of the costs for remotely obtaining a trial witness' testimony.  If this was a deposition, the costs incurred in teleconferencing the examination would not be recoverable as a cost, Guidelines, supra, Part II.D.2.3.  There is no equivalent provision for trial testimony obtained remotely and contemporaneously transmitted.  Some taxable costs or costs considered taxable may be analogous to renting a conference room for a witness to appear in.  As examples, the Guidelines deem not taxable long-distance telephone charges for telephonic depositions "or costs incurred in teleconferencing a deposition," Guidelines, Part II.D.2.c., while the court reporter's fees for attendance and travel for a deposition are taxable, id., Part II.D.1.h., as are trial testimony and transcripts procured at this Court's direction, id., Part II.D.1.d., a.  A witness' rental of a vehicle is not taxable, id., Part II.F.2.e., as are travel and expenses of counsel, id., Part III., Non-Taxable Costs 1.  The Guidelines preclude

recovery of office overhead, id., Part III., Non-Taxable Costs 10.  Since rental of space to remotely obtain trial testimony is not listed in 28 U.S.C. §§ 1920 (filing and related fees), 1921 (United States marshal's fees), or 1923 (docket fees), that cost should not be taxable costs, see Guidelines, supra, Part II.A.

Given the current situation where more proceedings are being conducted remotely due to the COVID-19 pandemic (including remote appearances of counsel, parties, and potentially witnesses), future prevailing parties may incur the cost for using remote conference space other than their offices for court appearances.  Congress (in amending 28 U.S.C. chapter 123 and bill of costs statutes) or this Court should re-examine its Guidelines to determine if the remote site rental by a litigant for a witness is recoverable as a cost.

This Court, however, need not decide now whether the current version of the Guidelines for Bill of Costs includes recovery of costs for rental of remote access space for trial testimony.  There is no prior approval for Plaintiff to incur this expense.  Plaintiff here has not produced an invoice from Esquire Deposition Solutions to confirm that the expense was incurred for use of the conference room.  This Court rejects this charge based upon her failure to substantiate it, see Anello, supra, 191 F. Supp. 3d at 285; Mendez, supra, 907 F. Supp. 2d at 360.

5.  Recoverable Transcription Costs

After this discussion, Plaintiff's justified transcription costs for taxation total $7,910.05; this Court arrived at this total by adding $3,113.90 in accepted transcription costs, $3,066.00 for deposition transcripts, $627.80 for Dr. Muhs' trial testimony at non-expedited rates, $1,084.05 for Dr. Khan's deposition testimony, and $18.30 for

transcribing this Court's oral ruling. Plaintiff's claims for Dr. Nader's deposition transcription and room rental from Esquire Deposition Solutions for Dr. Lall's remote appearance at the trial are denied.

### D. Duplication Charges

As for Plaintiff's duplication charges, Plaintiff claims she substantiated these charges (Docket No. 235, Pl. Atty. Reply Decl. ¶ 22). Plaintiff argues she is entitled to recover the costs of reproducing photographs used as trial exhibits and documents (id. ¶ 24). She objects to reducing her per page rate to $.10 for counsel's in-house duplication, an amount suitable 20 years ago or for larger law firms or the Government but not now appropriate for a small law firm (id. ¶¶ 26-31). She disputes Chief Judge Geraci's finding in Schmeichel v. Installed Building Products, LLC, No. 16CV410, 2019 WL 1585270, at *1 (W.D.N.Y. Apr. 12, 2019), as setting the current appropriate going rate for in-house duplication (id. ¶¶ 27-29).

### 1. In-House Duplication Costs

Plaintiff initially claimed a total of 12,672 pages duplicated in-house, claiming a rate of $.20 per page (Docket No. 226, Ex. B) for $2,534.40. The Amended Bill of Costs now claims only 2,777 pages copied, for a cost claim of $555.40, again at the $.20 per page rate (Docket No. 235, Pl. Atty. Reply Ex. E).

In its renewed objection (Docket No. 242, Gov't Atty. Decl. ¶¶ 23-24), the Government argues that Plaintiff fails to show that $.10 per page is unreasonable (Docket No. 241, Gov't Sur-Reply Memo. at 4-5) and believes Plaintiff thus entitled recover only $277.70 (Docket No. 242, Gov't Atty. Decl. ¶ 24).

Plaintiff responds that inflation since 1997 (when $.10 per page was first accepted as the reasonable in-house duplication rate) justified counsel now charging double that rate (Docket No. 245, Pl. Response ¶¶ 13-21).

Chief Judge Geraci in Schmeichel, supra, 2019 WL 1585270, applied in 2019 what appeared to be the going rate of $.10 per copy for in-house photocopying, id. at *1. Plaintiff here, however, has not presented evidence of the going rate being higher or that counsel's costs have increased to justify doubling the rate (see Docket No. 241, Gov't Sur-Reply Memo. at 4). Her attorney has not argued that lawyers in firms its size are currently charging this much for internal duplication. Instead, she argues that $.10 per page may have been reasonable 20 years ago but inflation, and the size of counsel's operation, somehow justifies doubling that rate to $.20 per page in 2018 (Docket No. 235, Pl. Atty. Reply Decl. ¶ 31).

Since this is the going rate, and not merely the rate Plaintiff's counsel would charge, Plaintiff has the burden of establishing that the going rate has changed since 1997 to 2007 (cf. id. ¶¶ 28-30, citing cases from that period). Although Plaintiff argues the Consumer Price Index and paralegal salaries obviously increased over the past 23 years since 1997 when the going rate was set, Plaintiff still has not met that burden. While that inflation rate may justify increasing the duplication charge and accepting her argument to distinguish her counsel from the Government or larger firms and their capacities (cf. id. ¶ 27), Plaintiff had to show that the marketplace (here similar law firms or attorneys in solo or small firm practices in Buffalo) charged more than this accepted $.10 rate. Plaintiff, however, has not shown that the marketplace has moved away from $.10 per page. Given Chief Judge Geraci's decision in Schmeichel in 2019 still had $.10

per page as a reasonable rate for in-house copying and absent evidence of higher amounts being charged in other law firms, this Court holds that the reasonable duplication rate remains $.10 per page.   As a result, Plaintiff's in-house duplication costs for 2,777 pages claimed in the Amended Bill (Docket No. 235, Ex. E) totals $277.70.

2.   Other Duplication Charges Claimed

The Government objects to recovery for color copies absent explanation of their necessity (Docket No. 242, Gov't Atty. Decl. ¶¶ 26, 28).  Alternatively, the Government argues the color copy rate of $.79 per page is "patently unreasonable," while another firm charged merely $.25 per page for color copies (id. ¶ 27).  Plaintiff has not defended the higher rate.   Thus, this Court accepts as reasonable $.25 per page for color copying. Given the medical evidence depicted in the color copying, this Court also accepts as necessary color copies rather than mere black and white duplicates.   This Court also accepts the 747 color pages Plaintiff generated for a total taxable cost of $186.75 (at $.25 per page).

The Government also object to recouping for the costs of binders, custom tabs, and three-hole punching (totaling $224.10), since these are not properly taxable (id. ¶¶ 25, 28).  Again, Plaintiff is silent as to justifying recovering for this expense.  Under the Guidelines for Bill of Costs, non-taxable costs include "costs related to preparing exhibits, binders, absent court approval, prior agreement between the parties, or a showing of necessity," Guidelines, Part II.H.2.c.  There was no prior stipulation by the parties or this Court's approval for taxing that expense and Plaintiff has not shown the necessity for charging this expense.   Binding, tabs, and three-hole punching of documents were necessary to comply with the Pretrial Order (Docket No. 87, Pretrial Order, Pretrial Order

Attachment ¶ 4 (format for copies of exhibits for Chambers)) but the expenses of furnishing these items is one usually borne by the producing party.  Plaintiff's request for taxation of this as a cost is denied.

The Government, however, had not objected to charges Plaintiff paid to two external copiers (D4, LLC, and the Copy Store).  Therefore, this Court holds Plaintiff can claim $609.18 for black and white copies made by D4, LLC, and the Copy Store.

The grand total of recoverable duplication and related costs thus is $1,073.63; from the total of $277.70 for in-house duplication, $609.18 for external black and white copies (by the Copy Store and D4, LLC), and $186.75 for allowed color copies.

E.  Plaintiff's Claimed Other Costs

The Government at first argued that Plaintiff's experts' travel costs lacked substantiation (Docket No. 228, Gov't Memo. at 12-14).  The Government only agreed to $102.00 in witness travel and other costs incurred by Plaintiff (id. at 14).

In reply, Plaintiff provides some substantiation for witnesses' travel expenses (Docket No. 235, Pl. Atty Reply Decl. ¶¶ 32-35, Ex. K).  She contends that the airfares paid were within the amounts deemed reasonable under the General Services Administration's guidelines for airfare rates (id. ¶ 33).  She argues that lodging and the per diem for a testifying expert is not limited to the date that expert testifies (id. ¶ 34, citing Abt Sys., LLC v. Emerson Elec. Co., No. 4:11CV00374 AGF, 2016 WL 5470198, at *4 (E.D. Mo. Sept. 29, 2016); Palm Bay, supra, 285 F.R.D. at 237).  Following review of claimed expense, she did reduce Dr. LeVaughn's travel expenses by $120.00 (id. ¶ 35).

The Government in its Sur-Reply seeks reductions in the expenses claimed for Dr. Muhs' travel, reducing it to an acceptable amount of $886.76 (Docket No. 242, Gov't

Atty. Decl. ¶ 29).  The Government made no further comment on the expenses claimed for Dr. LeVaughn as amended but concludes that reasonable costs in this category total only $2,863.80 (id.).

Plaintiff did document Drs. Muhs and LeVaughn's travel expenses totaling $2,570.82 (Docket No. 235, Ex. K).  Although the Government found a higher figure to be reasonable, this Court finds that recoverable witness fees and travel expenses supported in this record thus total $2,570.82.

F.  Acceptable Costs

With the accepted charged costs noted above totaling $420.00 and the costs deemed acceptable herein totaling $11,554.50, Plaintiff is entitled to recover $11,974.50 (or $2,669.23 less than what she claims in her Amended Bill of Costs of $14,643.73, Docket No. 235, Ex. A).  Below is a chart summarizing accepted costs.

| CATEGORY | SUBCATEGORY | SUBCATEGORY AMOUNTS | TOTAL AMOUNTS |
|---|---|---|---|
| Transcription Costs | | | $ 7,910.05 |
| | Undisputed Charges | $  3,113.90 | |
| | 2012 depositions | $  3,066.00 | |
| | Dr. Muhs Oct. 11, 2018, trial transcript cost adjusted | $    627.80 | |
| | Dr. Khan read deposition transcript | $  1,084.05 | |
| | March 2018 Oral Order transcribed; cost adjusted | $    18.30 | |
| | Dr. Nader deposition | $0 | |
| | Esquire Deposition Solutions room rental | $0 | |
| Duplication Costs | | | $  1,073.63 |

| CATEGORY | SUBCATEGORY | SUBCATEGORY AMOUNTS | TOTAL AMOUNTS |
|---|---|---|---|
| | In House duplication | $ 277.70 | |
| | External duplication | $ 609.18 | |
| | Color copies | $ 186.75 | |
| Travel and Other Costs | | | $ 2,570.82 |
| Accepted Costs | | | $ 420.00 |
| | Clerk's Fees | $ 350.00 | |
| | Service Fees | $ 70.00 | |
| TOTAL ALLOWABLE COSTS | | | $11,974.50 |

## V.    Conclusion

As a result, Plaintiff's Motion for a New Trial or Alter or Amend the Judgment (Docket No. 224) is granted in part, denied in part, denying her motion for a new trial and some of the relief sought in altering or amending the Judgment (Docket No. 221), while altering the Judgment on different grounds.  Howard Southard's award for his pain and suffering is now $3,540,000.00, the award for his consciousness of his impending death remains $366,663.00, and the remaining damages previously awarded, Coolidge, supra, 2020 WL 3467423 (Docket No. 220), total $8,773.64, for a grand total of $3,915,436.64. Plaintiff also is entitled to recover her costs totaling $11,974.50.

## VI.    Orders

IT HEREBY IS ORDERED, that Plaintiff's Motion for New Trial (Docket No. 224) is denied but her Motion to Alter or Amend the Judgment (id.) is granted in part and the Judgment amended as follows,

FURTHER, Judgment shall be amended and entered for Plaintiff that she recovers a total $3,915,436.64 from Defendant for decedent Howard Southard's pain and suffering, fear of impending death, death, and the loss of parental support by his distributee children from Defendant United States,

FURTHER, Judgment shall be entered awarding to Plaintiff Costs totaling $11,974.50;

FURTHER, that the Clerk of Court is directed to enter an Amended Judgment in favor of Plaintiff, consistent with this Decision and Order and the previous Decision and Order (Docket No. 220) as amended by this Decision and Order, pursuant to Rule 52(a) and 58 of the Federal Rules of Civil Procedure including post-judgment interest from the date of judgment is entered, see 28 U.S.C. § 2674.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:        March 31, 2021
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge